[No. B177138. Second Dist., Div. Seven. Apr. 4, 2005.]

SOUTHERN CALIFORNIA EDISON COMPANY, Petitioner, v.
PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA,
Respondent;
CALIFORNIA COGENERATION COUNCIL and THE CALIFORNIA
WIND ENERGY ASSOCIATION, et al., Real Parties in Interest.

## COUNSEL

J. Eric Isken and Berj K. Parseghian for Petitioner.

Roger J. Peters, William V. Manheim and Mary A. Gandesbery for Pacific Gas and Electric Company as Amicus Curiae on behalf of Petitioner.

Randolph L. Wu, Mary F. McKenzie, Helen W. Yee and Amy C. Yip-Kikugawa for Respondent.

White & Case, John A. Sturgeon, Jerry R. Bloom, Lisa A. Cottle and Karen E. Bowen for Real Parties in Interest the California Cogeneration Council and the California Wind Energy Association.

Ellison, Schneider & Harris, Douglas K. Kerner and Lynn M. Haug for Real Party in Interest Independent Energy Producers Association.

Alcantar & Kahl, Michael P. Alcantar, Evelyn Kahl and Rod Aoki for Real Parties in Interest Cogeneration Association of California and Energy Producers and Users Coalition.

## OPINION

**WOODS, J.**—On November 1, 2004, this court issued a writ of review to consider three related decisions of the California Public Utilities Commission (CPUC) pertaining to the lawfulness of orders requiring petitioner, Southern California Edison Company (Edison), to enter into wholesale power contracts with certain generators commonly referred to and known as qualifying facilities (QF's) at an administratively determined price. The decisions under consideration are D.03-12-062 (Dec. 22, 2003), D.04-01-050 (Jan. 22, 2004) and D.04-07-037 (Jul. 8, 2004). For convenience, all three decisions will be referred to collectively as "Decisions" unless context requires otherwise. For the reasons hereafter stated, we affirm the Decisions.

## *FACTUAL AND PROCEDURAL SYNOPSIS*

1. *The parties.*

Counsel for the parties to this writ proceeding do not take issue with the following description and legal capacities of the parties:

Edison. Petitioner Edison is a corporation formed and existing under the laws of the State of California and is an investor-owned electrical utility and an "electrical corporation" within the meaning of California Public Utilities Code section 218 and therefore is a "public utility" within the meaning of California Public Utilities Code section 216.

California Public Utilities Commission. Respondent CPUC is the administrative agency charged with regulating public utilities pursuant to Article XII of the California Constitution and the Public Utilities Act.

California Cogeneration Council. Real party in interest California Cogeneration Council (CCC) is an ad hoc association of natural gas fired cogenerators located throughout California whose members are qualifying facilities pursuant to the federal Public Utility Regulatory Policies Act of 1978 (PURPA).

Cogeneration Association of California. Real party in interest Cogeneration Association of California (CAC) represents the power generation, power marketing and cogeneration operation interests of the Kern River Cogeneration Company, Sycamore Cogeneration Company, ChevronTexaco Kern Field Projects, Sargent Canyon Cogeneration Company, Salinas River Cogeneration Company, ChevronTexaco North Midway Cogeneration Project, ChevronTexaco McKittrick Cogeneration Project, Midway Sunset Cogeneration Company and Watson Cogeneration Company.

Energy Producers and Users Coalition. Real party in interest Energy Producers and Users Coalition (EPUC) represents the end-use and customer generation interest of Aera Energy LLC, BP America Inc., Chevron U.S.A. Inc., Shell Oil Products US, ExxonMobil Corporation, THUMS Long Beach Company, Occidental Elk Hills, Inc., and Valero Refining Company-California.

Independent Energy Producers Association. Although not entirely clear from the record what legal entity or form Independent Energy Producers

Association (IEPA)[1] is operating under and equally cryptic is an absence of a description of persons or entities that it represents, there is no challenge to the right of IEPA to appear as a real party in interest in this writ proceeding. We obtain some relief from speculation by reading and repeating here the following comment contained in footnote 1 of its answer filed on September 20, 2004: "IEP submits this Answer as a Real Party In Interest. IEP was a party of record to the Commission's Rulemaking 01-10-024 proceeding and presented in that proceeding a position adverse to that taken by Petitioner in the proceeding. Accordingly, IEP is a real party in interest to this proceeding. (Cal. Rules of Court, Rule 58(a); *PG&E Corp. v. Public Utilities Commission* (2004) 118 Cal.App.4th 1174, 1192 [13 Cal.Rptr. 3d 630].)"

Pacific Gas and Electric Company. Pacific Gas and Electric Company (PG&E) is a public utility corporation organized under the laws of the State of California, which provides natural gas and electric service to customers throughout Northern and Central California. PG&E was an active party to the CPUC proceedings in which the decisions on review were issued and which PG&E claims directly and adversely affect it. Accordingly PG&E has been given amicus curiae status by order of this court.

## 2. *Background of related cases and proceedings.*

In September of 2002 in *Southern California Edison Co. v. Public Utilities Com.* (2002) 101 Cal.App.4th 982 [125 Cal.Rptr.2d 211], this court reviewed the core issue involved in the decisions before us at the present time, namely, the lawfulness of wholesale QF power contracts required of Utilities at administratively determined prices. For convenience this court refers to our September 2002 decision as *Edison II*. For information purposes and logical context we refer to the prior opinion of this court also decided in 2002 as *Edison I*. *Edison I* is this court's decision in August of 2002 entitled *Southern California Edison v. Public Utilities Com.* (2002) 101 Cal.App.4th 384 [124 Cal.Rptr.2d 281].

In *Edison II* this court reviewed the 2001 updated pricing formula for QF contracts. That pricing formula established what is commonly referred to as short-run avoided cost (SRAC). The formula is of key importance because utilities, like Edison and PG&E, must purchase power from QF's as required by Congressional mandate under PURPA, but at a price that must not exceed the utility's avoidable or "avoided costs." In other words, the utility is mandated to purchase alternative QF power but cannot be ordered to pay more for the QF power than it would otherwise cost the utility to generate or purchase that power from other

---

[1] IEPA and IEP are used synonymously in this opinion.

established sources. In enacting PURPA in 1978 the congressional intent was clear: Congress desired to reduce dependence on foreign sources of power by encouraging the development of alternative sources of domestic power delineated as QF's. But in fairness to established utilities, Congress declared that the mandated purchases from QF's did not include paying more for energy than could be avoided by accessing more traditional sources with comparably lower energy prices.

Congress relegated to the individual states the task of implementing PURPA in accordance with congressional intent. Coextensive with SRAC, CPUC developed what is known as Standard Offer No. 1 (SO1) which required utilities to purchase alternative sources of power from QF's by entering into contracts with QF's pursuant to the terms and conditions contained in SO1. In *Edison II* this court reviewed and affirmed the SRAC pricing formula as applied to the SO1 contracts.

Edison now takes issue with the SRAC formula in view of the mandate from the CPUC that *Edison* renew existing QF/SO1 contracts based upon the presently existing 2001 formula. In essence, Edison is contending that such contracts exceed its avoided costs, thereby resulting in a violation of PURPA.

### 3. *Contentions of the parties.*

*Edison.*

In its petition Edison summarizes its contentions in this writ proceeding as follows: "Before ordering Edison to enter into the QF contracts at issue, the Commission had a duty to ascertain and affirmatively find that the pricing it imposed on Edison's ratepayers under the contracts complied with PURPA's avoided cost limitation. The Commission failed to make the requisite findings in the Decisions. Indeed, it could not have done so because the record before the Commission indisputably established that the payment formula used in the contracts mandated by the Commission yields prices that systematically *exceed* Edison's avoided cost. Therefore, the Decisions unlawfully exceed the Commission's limited grant of jurisdiction under federal law insofar as they order Edison to enter the contracts at issue."[2] (Italics in original.)

---

[2] In its "Application For Leave To File AMICUS CURIAE Brief" PG&E summarizes its position by essentially tracking the contentions of Edison as follows: "In the decisions on review, the CPUC exceeded the scope of its authority. As discussed in the accompanying brief, in issuing Decisions 03-12-062 and 04-01-050, the CPUC violated the Public Utilities Regulatory Policy Act of 1978, 16 U.S.C. § 824a-3 et seq. ('PURPA') by requiring the utilities to enter into power purchase agreements without first determining that the price in those agreements does not exceed the utilities' avoided costs."

*CPUC.*

In its answer to Edison's petition, CPUC restates in capsule form its contentions as follows: "As SRAC pricing is not at issue in the procurement proceeding and the Decisions simply extend an interim methodology that had been adopted in a previous decision, there is no basis for concluding that the Decisions have made SRAC pricing determinations in violation of PURPA. Moreover, even if avoided cost pricing for QF's were an issue (which it is not), the Commission has acted lawfully. In D.04-04-037, the Commission specifically noted that it considered the evidence regarding SRAC pricing presented by the parties and concluded that 'the evidence in this proceeding has not demonstrated that SRAC prices are in violation of the PURPA avoided cost standard.'

"Indeed, since the Decisions have made no changes to the findings in D.01-03-067 and D.02-08-071 regarding SRAC pricing, Edison's challenge to the Decisions is in effect a challenge to D.01-03-067, which adopted the SRAC Formula, and D.02-08-071, which extended certain expired or soon-to-expire QF contracts on an interim basis. However, Edison is barred from raising such a challenge. The validity of the SRAC Formula was upheld in *Southern Cal. Edison Co. v. Public Utilities Com., supra,* 101 Cal.App.4th [982]. It is now a final decision [*sic*] and, with court review, constitutes res judicata. (See *Clark v. Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865].) The statutory timeframe for seeking review of D.02-08-071 has passed, and it too is now a final decision. (See Pub. Util. Code, §§ 1731, subd. (b) & 1756, subd. (a).) Edison is precluded from raising a challenge to this decision under section 1709, which states: 'In all collateral actions or proceedings, the orders and decisions of the commission which have become final shall be conclusive.' (Pub. Util. Code, § 1709; see also *People v. Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 630 [268 P.2d 723].) Accordingly, Edison is essentially challenging D.01-03-067 and D.02-08-071, and it is barred from doing so under section 1709 and the doctrine of res judicata."

*Real Parties in Interest—CCC/CAC/EPUC/IEPA.*

Generically speaking, for purposes of brevity, real parties in interest represent the interests of QF's under PURPA. Real parties are uniform in their contentions that SO1 was lawfully developed in accordance with SRAC and since they, or their clients, constitute legitimate QF's, the utilities are required to purchase alternative sources of power from QF's pursuant to the terms and conditions contained in SO1.

A useful summary of the *group* contentions of real parties in interest is to be found in the additional brief of IEPA filed on November 22, 2004, as follows:

"This case is simple and straightforward. Edison claims that the Commission has violated the Public Utility Regulatory Policies Act ('PURPA')[3] by not 'ascertaining' and 'affirmatively finding' that qualifying facility ('QF') prices are consistent with PURPA in the same decision in which the Commission approved extension of certain QF contracts. Edison's argument is legally and factually flawed. It is legally flawed because PURPA does not dictate where and when the Commission is to make particular findings regarding QF pricing. It is factually flawed because the Commission actually did clearly and specifically affirm that the current QF prices are consistent with PURPA. The fact that Edison doesn't like the Commission's findings and conclusions simply does not provide grounds for reversal. . . . [¶]

"IEP's September 20, 2004 Answer reviews in detail the factual and procedural history underlying this proceeding. To briefly review, the key facts underlying this matter are:

—"The Short-Run Avoided Cost ('SRAC') pricing formula for Standard Offer No. 1 ('SO1') QF contracts was reviewed and updated in 2001 and affirmed by this Court in 2002. *Southern California Edison Co. v. CPUC*[, *supra*,] 101 Cal.App.4th 982.

—"The underlying proceedings in this case were not noticed or intended to be a forum for further review of the SRAC pricing formula. Rather, they were focused on utility procurement, including among many other issues the renewal of existing QF contracts. D.03-12-062 ([Ex.] 72, p. 4331); D.04-01-050 ([Ex.] 83, p. 5585).

—"Edison argued in the underlying proceedings that current SRAC prices were 'systematically' above avoided cost, and that the Commission had an obligation to review the SRAC pricing formula again, notwithstanding the fact that it had recently been reviewed, adjusted and affirmed.

—"The Commission rejected Edison's attempt to turn the procurement proceeding into a forum for re-examination of the SRAC formula. The Commission carefully examined and specifically rejected Edison's allegations that SRAC prices exceeded avoided cost, explicitly clarifying on rehearing that 'the evidence does not demonstrate that SRAC prices violate PURPA.' D.04-07-037 at 6 ([Ex.] 89, p. 5711).

—"Acknowledging the need for ongoing SRAC review, the Commission opened a new docket, Rulemaking 04-04-025. This proceeding is currently underway."

---

[3] "Public [Law] No. 95-617 (Nov. 9, 1978) 92 Stat. 3117."

## STANDARD OF REVIEW

In its "Answer of Respondent to Petition for Writ of Review," CPUC sets forth in detailed format the standard of review for Commission Decisions. This court finds the detailed presentation appearing in the answer of CPUC to be accurate in stating the law as follows:

■ "The Court of Appeal has jurisdiction to review the Commission Decisions at issue pursuant to Public Utilities Code Section 1756(a), which provides that, 'any aggrieved party may petition for a writ of review in the court of appeal . . . .' (Pub. Util. Code, § 1756, subd. (a).)

■ "Review of Commission Decisions is discretionary rather than mandatory. The Court has the discretion to issue or deny the issuance of a writ. As stated in Public Utilities Code Section 1756: '*If the writ issues*, it shall be made returnable at a time and place specified by court order and shall direct the [C]ommission to certify its record in the case to the [C]ourt within the time specified.' (Pub. Util. Code, § 1756, subd. (b); see *Pacific Bell v. Public Utilities Com.* (2000) 79 Cal.App.4th 269, 277–279 [93 Cal.Rptr.2d 910], interpreting this statutory provision.) ■ Thus, the court need not grant a writ if the petitioning party fails to present a convincing argument that the decision should be annulled. (*Id.* at p. 272.)

"Public Utilities Code Section 1757 governs the Court of Appeal's review of the Commission's decisions. Pursuant to Section 1757(a), the review:

" '. . . shall not extend further than to determine, on the basis of the entire record . . . whether any of the following occurred:

"(1) The commission acted without, or in excess of, its powers or jurisdiction.

"(2) The commission has not proceeded in the manner required by law.

"(3) The decision of the commission is not supported by the findings.

"(4) The findings in the decision of the commission are not supported by substantial evidence in light of the whole record.

"(5) The order or decision of the commission was procured by fraud or was an abuse of discretion.

"(6) The order or decision of the commission violates any right of the petitioner under the Constitution of the United States or the California Constitution.' (Pub. Util. Code, § 1757, subds. (a)(1)–(a)(6).)

(4) "Under this standard, the Court of Appeal is to determine whether the Commission acted contrary to a statute, to the state or federal constitution, in excess of its jurisdiction, as a result of fraud, or in abuse of discretion. In addition, the Court is to determine whether the Commission's decision is supported by findings, and whether those findings are in turn supported by 'substantial evidence' in light of the whole record."

With this standard of review in mind we now determine the legality of the proceedings in the decisions under review.

## DISCUSSION

### A. Primary Focus of Procurement Rulemaking.

CPUC takes issue with Edison's contention that the procurement rulemaking and the Decisions under review effect changes or modifications to QF avoided cost pricing methodologies. To the contrary, CPUC maintains that the purpose of procurement rulemaking is to establish the necessary operating procedures and ratemaking mechanisms for the utilities to resume full procurement of power. In other words, as contended by CPUC, the Decisions establish an overall framework for utility procurement of electricity and include consideration of "whether the QF contracts should be extended, and over what term, and the degree to which PURPA requires that the utilities purchase QF power." In response, however, to part of the testimony proffered by the utilities and arguments based thereon to the effect that the SRAC pricing formula yielded prices that did not represent their avoided costs, CPUC determined that rulemaking should be opened to consider avoided costs which would include QF pricing policies.

The record is clear that CPUC extended the interim treatment established in D.02-08-071 to certain utility contracts with QF's that had expired or were soon to expire and in doing so, utilized SO1 contracts with pricing based on the SRAC formula. It is also clear that CPUC determined that extension of the interim treatment would ensure continued availability of QF power pending completion of its review of QF pricing policies.

We note, as stated *post*, the SRAC formula was upheld as valid by this court in *Edison II*. However, as explained by CPUC, a comprehensive review of avoided costs issues, including SRAC, pricing is currently under consideration in R.04-04-025, which in the words of CPUC "serves as the Commission's forum for developing a common methodology, consistent input assumptions and updating procedures for avoided costs across our various proceedings, and for adopting avoided cost calculations and forecasts that conform to those determinations. It is the forum for considering similarities

as well as appropriate differences in methods and inputs for specific application of avoided costs, *including QF avoided cost pricing."* (Italics added.)

B. *Substantial Evidence Does Not Support Edison's Claim of PURPA Violation.*

We note that none of the three Decisions under review have made changes regarding SRAC pricing. We further note that the SRAC formula was reviewed and adopted in Decision D.01-03-067 and extended in Decision D.02-08-071 on an interim basis to certain QF's whose contracts had expired or were about to expire. In *Edison II*, the validity of the SRAC formula was upheld by this court. It was incumbent upon Edison to present evidence to demonstrate that the extensions being considered would impose unlawful pricing in violation of PURPA. The CPUC found "the evidence cited by SCE only demonstrates that during some periods SRAC formula costs exceeded spot market costs. This is not the same as systematically exceeding avoided costs in violation of PURPA, and the evidence in the proceeding does not show systematic and continuously excessive prices. . . . [¶] . . . We agree that the evidence in this proceeding has not demonstrated that SRAC prices are in violation of the PURPA avoided cost standard. However, that evidence has raised issues concerning the accuracy of the SRAC formula, which the Commission will review in its recently opened rulemaking." This court holds that the record supports the above findings and concludes the orders of the CPUC are appropriate.

C. *CPUC Criticism of SRAC Formula Does Not Demonstrate a PURPA Violation.*

During the procurement proceedings in D.03-12-062, CPUC admittedly criticized the SRAC formula and, to use an idiomatic expression, found advisable a subsequent hearing to "fine tune" the SRAC Formula. Edison capitalizes on this criticism by urging this court to find that a violation of PURPA was established. We are of the opinion that Edison paints with an exceedingly *broad brush*. Such criticism by CPUC, after hearing testimony by the experts from the contending parties, merely established that indeed a fine tuning hearing to determine if adjustments to the SRAC formula would be in order. As indicated previously, CPUC did set such a hearing in which the fine tuning issue would be of prominent importance. Such hearing has been set by the CPUC in R.04-04-025, during which all parties concerned can fully and fairly present their contentions, evidence and arguments. It would be a quantum leap to conclude, as urged by Edison, that PURPA was violated when the CPUC merely criticized the SRAC formula during the course and scope of the procurement proceedings in Decisions now under review.

■ To the extent that Edison's avoided costs are exceeded in the SO1 contracts being required of Edison under the current SRAC formula, the CPUC attempted to ameliorate the impact by pronouncing that if a decision in R.04-04-025 shows a systematic violation of PURPA, then Edison is to be given credit for any PURPA violations by reason of Edison being required to enter into SO1 contracts with QF's for such violations. We remind CPUC, however, in considering any such credit, of our holding in *Edison II* as follows: "Here, by failing to make a decision as to whether the SRAC prices should be applied retroactively, the Commission ran afoul of the Congressional mandate that public utilities not pay QF's more than the avoided cost. [¶] It may be that the evidence will show the SRAC prices were correct for the period of December 2000 through March of 2001. If the Commission makes this determination and it is based upon substantial evidence, that will end the matter. However, if the evidence shows that the formula in Decision No. 01-03-067 should have been applied retroactively to arrive at a more accurate SRAC, then it is the Commission's duty to apply it retroactively. The Commission does not have the power to thwart Congressional intent by having a policy inconsistent with that set forth in PURPA. (*Independent Energy Producers Ass'n, Inc. v. CPUC* (9th Cir. 1994) 36 F.3d 848, 854–55.)" (*Edison II, supra*, 101 Cal.App.4th at pp. 998–999.)

### D. *CPUC's Lack of Diligence.*

This court is cognizant of the fact that price formulation and procurement arrangements with QF's are not simple matters. As the record in this case demonstrates, adjustment of any SRAC formula and subsequent adjustment to contracts with QF's at administratively determined prices require a great deal of deliberation, evidence and formulizing. That being said, it is apparent from this record that the new rulemaking in R.-04-04-025 was opened and has been pending since April of 2004. It is not Edison that is being harmed by this lengthy delay, since we interpret the willingness of the CPUC to give Edison any credit found to be due as an indication of intent that the fine tuned formula will be applied retroactively to QF contracts presently required of Edison under the existing formula. It does not appear that CPUC will be harmed other than suffering a tarnished image for being a slow-moving bureaucracy. In truth and in fact the ones being harmed by such procrastination are the ratepaying customers of Edison and the general public. For this reason we urge the CPUC to expedite the proceedings in R.-04-04-025.

### E. *Undetermined Issues Reserved for Proceedings in R.-04-04-025.*

We are cognizant that the parties to this writ proceeding have presented an extensive "laundry list" of contentions for resolution by this court. To the

extent that any issues have gone unaddressed by this court, it is not by oversight but by design. Any unaddressed issues are reserved for future determination in R.-04-04-025 should the parties deem such issues appropriate in those proceedings.

## DISPOSITION

The Decisions under review are affirmed.

Perluss, P. J., and Zelon, J., concurred.

A petition for a rehearing was denied April 29, 2005.