[No. D055666. Fourth Dist., Div. One. Aug. 17, 2010.]

UTILITY CONSUMERS' ACTION NETWORK, Petitioner, v.
PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA,
Respondent;
SAN DIEGO GAS AND ELECTRIC COMPANY, Real Party in Interest.

690

## Counsel

Art Neill, Joshua C. Anaya, Steven P. McDonald, Rachel A. Zellner, Steven M. Siegel, Matthew Vespa and Justin Augustine for Petitioner.

Frank R. Lindh, Helen W. Yee, Dale Holzschuh and Sophia Park for Respondent.

E. Gregory Barnes; Latham & Watkins, James L. Arnone, Damon P. Mamalakis and Benjamin J. Hanelin for Real Party in Interest.

Nancy Saracino, Judith B. Sanders; Davis Wright Tremaine, Jeffrey P. Gray and Salle E. Yoo for California Independent System Operator Corporation as Amicus Curiae on behalf of Real Party in Interest.

Jonathan Blees and William M. Chamberlain for California Energy Commission as Amicus Curiae on behalf of Respondent and Real Party in Interest.

## Opinion

**McINTYRE, J.**—In this proceeding, we consider the petition for writ of review filed by the Utility Consumers' Action Network (UCAN) challenging Public Utilities Commission of the State of California (Commission) decisions Nos. 08-12-058 and 09-07-024, which granted San Diego Gas and Electric Company's (SDG&E) application for a certificate of public convenience and necessity (CPCN) to construct the Sunrise Powerlink Transmission Project (Sunrise). (Pub. Util. Code, §§ 1001, 1757; undesignated statutory references are to the Public Utilities Code.) UCAN does not dispute the sufficiency of the evidence to support the Commission's findings. Instead, it argues that the Commission applied the wrong burden of proof, improperly relied on "extra-evidentiary material facts" to support its findings, and failed to assess cost-effective alternatives as required under section 1002.3. We find no merit in UCAN's arguments and deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

We begin by reminding the parties that this original proceeding is governed by the appellate rules. (Cal. Rules of Court, rule 8.4.) California Rules of

Court, rule 8.204(a)(1)(C), which applies to writ proceedings (Cal. Rules of Court, rules 8.4, 8.486(a)(6)), requires that the parties' briefs "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears. . . ." Here, the parties omitted citations to the record or incorrectly cited numerous documents, or, when stating a single fact, cited an entire, sometimes lengthy, document. We are not required to independently search this extensive record to verify the factual or procedural points cited by the parties. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 695, pp. 764–765.) Because all parties failed to comply with California Rules of Court, rule 8.204(a)(1)(C), we take most of the factual and procedural background from the Commission's two decisions. (See *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 [94 Cal.Rptr.3d 802] [rather than striking appellant's brief for violation of the rule requiring citations to the record, the reviewing court simply declined to consider the portions of the statement of facts that failed to comply].) We shall refer to the Commission's December 2008 decision No. 08-12-058 granting SDG&E's application as the "Decision" and its July 2009 decision No. 09-07-024 modifying the Decision as the "Modified Decision."

In December 2005, SDG&E applied for a CPCN authorizing construction of Sunrise. Due to deficiencies in the 2005 application, SDG&E filed an amended application in August 2006 which the Commission treated as a new proceeding. SDG&E's original plans for Sunrise (the Proposed Project) included new 500/230 kilovolt (kV) transmission lines running approximately 150 miles between the Imperial Valley substation and the western portion of SDG&E's San Diego service area, a new substation in central San Diego County, and other system upgrades and modifications. A 25-mile portion of the proposed 500 kV line crossed Anza-Borrego Desert State Park. SDG&E stated in its 2006 application that Sunrise was needed by 2010 to meet the grid reliability requirements of the California Independent System Operator (CAISO), to enable SDG&E to meet its 2010 renewable energy targets, and to mitigate energy costs.

The Commission's evaluation of the Proposed Project followed two parallel tracks: (1) the CPCN track, which focused on economics; and (2) the environmental track, which assessed impacts as required by the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21100 et seq.) and the National Environmental Policy Act of 1969 (NEPA) (42 U.S.C. § 4321 et seq.). The final environmental impact report (FEIR) made no recommendation regarding the approval or denial of the Proposed Project, but its contents provided information used by the Commission in deciding whether to issue the CPCN. Public Resources Code section 21168.6 gives the Supreme Court exclusive jurisdiction over challenges to the Commission's approval of the FEIR. The Supreme Court is holding that challenge in abeyance pending our resolution of the nonenvironmental issues. (*Utility Consumers' Action*

*Network v. California Public Utilities Com.* (order filed Dec. 17, 2009, S175532) 2009 Cal. Lexis 13058.)

The CPCN proceedings under section 1001 considered whether SDG&E established a need for the Proposed Project or for an alternative evaluated in those proceedings. The CPCN proceedings were devoted to *quantifying* the benefits claimed by SDG&E to determine whether the Proposed Project could meet the goals of reliability, use of renewable energy, and reduced cost more economically than other alternatives. For this purpose, the Commission adopted a slightly modified version of CAISO's modeling approach, based on numerous assumptions described in the Decision as forming the analytical baseline.

In 2006, the Legislature adopted Assembly Bill No. 32 (2005–2006 Reg. Sess.), which requires California to reduce its greenhouse gas (GHG) emissions to 1990 levels by 2020. (Health & Saf. Code, § 38550, including Historical and Statutory Notes, 41B West's Ann. Health & Saf. Code (2010 supp.) foll. § 38550, p. 13.) The Commission adopted policies and rules designed to achieve these goals in the energy sector, including the recommendation that the electricity sector achieve renewable procurement at 33 percent renewable portfolio standard (RPS) by 2020. The California Air Resources Board (CARB) was tasked with implementing those rules. Models used in the CPCN proceedings reflected California's GHG policy goals.

On the CEQA/NEPA track, the Commission as lead agency performed a detailed analysis of 27 alternatives to the Proposed Project, including the "No-Project Alternative." The alternatives offered both generation-based and transmission-based plans, and both minor adjustments and major route changes. The No-Project Alternative included as possibilities the "All-Source Generation Alternative," the "In-Area Renewable Generation Alternative," and the "Lake Elsinore Advanced Pump Storage (LEAPS) Transmission-Only Alternative." Together with the United States Bureau of Land Management (BLM), the Commission prepared an 11,000-page FEIR. The FEIR ranked the Proposed Project and various alternatives in terms of environmental superiority in the following order: (1) All-Source Generation Alternative; (2) In-Area Renewable Generation Alternative; (3) LEAPS Transmission-Only Alternative; and (4) "Final Environmentally Superior Southern Route Alternative." The last alternative was the only choice among the top four that included transmission lines providing direct access to new renewable resources in Imperial County. It ranked the Proposed Project and other alternative routes through portions of Anza-Borrego Desert State Park below the first four because of their unmitigable impacts on that environmentally sensitive region.

The Commission represents that the assigned administrative law judge and at least two members of the Commission issued alternate proposed decisions, and that four of the five commissioners ultimately adopted the Decision at issue here. The Commission found the first three environmentally superior alternatives "infeasible" because they failed to meet California's broader policy goals of facilitating renewable energy development and reducing GHG emissions in the energy sector. In December 2008, it granted SDG&E's CPCN request for the routing alternative identified in the FEIR as the Final Environmentally Superior Southern Route Alternative and certified the FEIR. The Commission also analyzed the cost of the Final Environmentally Superior Southern Route Alternative in comparison to the alternatives, concluding: "Assuming renewable procurement at the level of 33% Renewable Portfolio Standard (RPS), we estimate that the Final Environmentally Superior Southern Route will generate net benefits of over $115 million per year, and we find that it is the second highest ranked Alternative that will facilitate our policy to achieve greenhouse gas (GHG) reductions through renewable procurement at 33% RPS levels in the shortest time possible." (Fns. omitted.)

UCAN filed an application for rehearing listing 18 "appealable deficiencies" in the Commission's Decision. The Commission denied rehearing but filed the Modified Decision, which corrected or clarified parts of the original Decision. Among other things, the Modified Decision altered the Commission's calculation of the capital cost of the All-Source Generation Alternative. UCAN filed a timely petition for writ of review in August 2009. In December 2009, before filing its answer to UCAN's petition, the Commission acted on its own motion to correct "inadvertent calculation errors" in the Decision and Modified Decision, including an error relating to the capital cost of the All-Source Generation Alternative.

## DISCUSSION

### I. *Governing Law*

■ The Commission is charged with ensuring that public utilities "furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities . . . as are necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public." (§ 451.) Thus, no electrical corporation may begin construction or extension of lines "without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction." (§ 1001.) In granting the CPCN pursuant to section 1001, the Commission "shall give consideration to the following factors:

"(1) Community values.

"(2) Recreational and park areas.

"(3) Historical and aesthetic values.

"(4) Influence on environment . . . ." (§ 1002.)

■ In addition, whenconsidering an application for an electric transmission facility, "the commission shall consider cost-effective alternatives to transmission facilities that meet the need for an efficient, reliable, and affordable supply of electricity, including, but not limited to, demand-side alternatives such as targeted energy efficiency, ultraclean distributed generation, as defined in Section 353.2, and other demand reduction resources." (§ 1002.3.) The electric corporation's application for a CPCN "shall include . . . [¶] . . . [¶] (d) [a] cost analysis comparing the project with any feasible alternative sources of power. The corporation shall demonstrate the financial impact of the plant, line, or extension construction on the corporation's ratepayers, stockholders, and on the cost of the corporation's borrowed capital." (§ 1003.)

■ A party seeking judicial review of a Commission's decision must first file an application for rehearing. (§ 1756, subd. (a).) "The application for a rehearing shall set forth specifically the ground or grounds on which the applicant considers the decision or order to be unlawful. No corporation or person shall in any court urge or rely on any ground not so set forth in the application." (§ 1732.) In other words, the petitioner may not raise in court a matter not included in its application for rehearing. (See, e.g., *Southern Cal. Edison Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 1086, 1101, fn. 7 [102 Cal.Rptr.2d 684].)

Section 1757 governs our examination of cases properly before this court on petition for writ of review. (§ 1757, subd. (a); see *Southern Cal. Edison Co. v. Public Utilities Com.* (2005) 128 Cal.App.4th 1, 9 [26 Cal.Rptr.3d 700].) "[R]eview by the court shall not extend further than to determine, on the basis of the entire record . . . whether any of the following occurred:

"(1) The commission acted without, or in excess of, its powers or jurisdiction.

"(2) The commission has not proceeded in the manner required by law.

"(3) The decision of the commission is not supported by the findings.

"(4) The findings in the decision of the commission are not supported by substantial evidence in light of the whole record.

"(5) The order or decision of the commission was procured by fraud or was an abuse of discretion.

"(6) The order or decision of the commission violates any right of the petitioner under the Constitution of the United States or the California Constitution." (§ 1757, subd. (a).)

██ The parties are required to support their points with argument, any case authority, and record citations. (Cal. Rules of Court, rules 8.4, 8.204(a)(1)(B) & (C).) If a party fails to support a claim of error with argument, or support an argument with the necessary citations to the record, we may deem the argument waived. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [79 Cal.Rptr.3d 588]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416].)

UCAN's application for rehearing referenced section 1757 and argued the Commission committed "legal" error in 18 ways. It challenged the Decision on four grounds listed in section 1757: (1) the Commission did not proceed in the manner required by law; (2) the Decision was not supported by the findings; (3) the findings were not supported by substantial evidence; and (4) the Commission abused its discretion. However, UCAN generally failed to identify the specific ground for challenging each of the 18 claims of error.

In its petition for writ of review, UCAN expressly declines to challenge the sufficiency of the evidence to support the findings, but asserts that the Commission acted "in excess of its powers and jurisdiction, . . . failed to proceed consistent with California law, and . . . abused its discretion." Because the question of the Commission's power and jurisdiction is not properly before us (§ 1732), and UCAN does not brief abuse of discretion in its points and authorities (Cal. Rules of Court, rule 8.204(a)(1)(B); *In re Marriage of Falcone & Fyke, supra,* 164 Cal.App.4th at p. 830), our review of the Decision and Modified Decision is limited to the question whether the Commission "has not proceeded in the manner required by law." (§ 1757, subd. (a)(2).)

In conducting this review, we are mindful that "[t]here is a strong presumption of validity of the [C]ommission's decisions . . . ." (*Greyhound Lines, Inc. v. Public Utilities Com.* (1968) 68 Cal.2d 406, 410–411 [67 Cal.Rptr. 97, 438 P.2d 801] (*Greyhound*).) Courts routinely defer to an

agency's interpretation of its own regulations because of its expertise in that area of the law. (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244].) Although an agency is accorded less deference in its interpretation of statutes (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031]), the "[Commission's] interpretation of the Public Utility Code 'should not be disturbed unless it fails to bear a reasonable relation to statutory purposes and language' " (*Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 796 [3 Cal.Rptr.3d 703, 74 P.3d 795]).

With these principles in mind, we turn to the merits of UCAN's petition for writ of review.

## II. *The Commission Applied the Correct Standard of Proof*

The Commission applied the preponderance of the evidence standard of proof stating in its Decision that "[t]he preponderance of the evidence is generally the default standard in civil and administrative law cases . . . ." (Fn. omitted.) UCAN argued in its application for rehearing that the Commission erred in rejecting UCAN's argument that the higher clear and convincing standard should apply to CPCN applications involving high-priced projects such as Sunrise, which are likely to impact utility rates. The Commission reiterated in the Modified Decision that it had limited application of the clear and convincing standard to "general rate cases and reasonableness reviews which are specialized proceedings." UCAN, the Commission and SDG&E repeat those arguments here, UCAN maintaining that the lesser burden of proof should not have been used in a case which "poses a $1.9 billion expenditure to be paid by the state's ratepayers."

The difference between the two standards of proof is easy to articulate, but often difficult to apply. Witkin states that "[t]he phrase 'preponderance of evidence' is usually defined in terms of probability of truth, e.g., 'such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth.' " (1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Presumptions, § 35, p. 184; see CACI No. 200 ["more likely true than not true"].) In contrast, the phrase "clear and convincing" is defined as " 'clear, explicit and unequivocal,' 'so clear as to leave no substantial doubt,' and 'sufficiently strong to command the unhesitating assent of every reasonable mind.' [Citation.] Otherwise stated, a preponderance calls for probability, while clear and convincing proof demands a *high probability*." (1 Witkin, Cal. Evidence, *supra*, Burden of Proof

and Presumptions, § 38, p. 187; see CACI No. 201 ["it is highly probable that the fact is true"].)

Contrary to UCAN's representations, the Commission does not characterize the question of burden of proof in a CPCN proceeding as a matter of first impression. The Commission stated in its Modified Decision that "[b]y default [it] has applied the preponderance standard in CPCN proceedings, and therefore there is precedent for applying the less stringent standard."

■ UCAN attempts to shift to the Commission the burden of establishing error by urging us to "require the [Commission] to justify its use of a lesser standard for CPCN cases that pose very large cost exposure to ratepayers." However, the party seeking judicial review of a Commission decision has the burden of establishing grounds for setting aside the decision. (See, e.g., *Market Str. Ry. Co. v. Railroad Com.* (1944) 24 Cal.2d 378, 399 [150 P.2d 196].)

Turning to the merits, UCAN offers no statutory or case authority to support its argument the Commission should change its procedure, or that the Commission failed to proceed in the manner required by law when it applied the preponderance of the evidence standard of proof to SDG&E's application. (§ 1757, subd. (a)(2).) Nor does UCAN provide any authority to bolster its theory that the projected cost of a project such as Sunrise should determine the standard of proof to be applied. Accordingly, the presumption of validity provides sufficient grounds to reject UCAN's arguments. (*Greyhound, supra,* 68 Cal.2d at pp. 410–411.)

■ We also reject any suggestion that the burden of proof question involves statutory interpretation of Evidence Code section 115, which reads in part: "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." The California Constitution authorizes the Commission to establish its own procedures. (Cal. Const., art. XII, § 2.) The Commission need not apply "the technical rules of evidence." (§ 1701.) ■ Moreover, the Legislature placed Evidence Code section 115 in the definitions section of that code and the statute does not purport to govern the standard of proof applicable in any particular proceeding. (See Evid. Code, § 100 et seq.) In any event, in the absence of authority to support its argument in favor of the higher burden of proof in CPCN cases, it is difficult to see how Evidence Code section 115 helps UCAN.

Based on the foregoing, we defer to the Commission's use of the preponderance of the evidence standard as "the default standard in administrative

proceedings and . . . therefore the appropriate standard for CPCN applications." (Fn. omitted.)

### III. *The Commission Properly Considered Oral Argument and Other "Facts" Cited by UCAN*

UCAN contends the Commission failed to act in the manner required by law (§ 1757) by relying on evidence that is "either inexpert, oral argument or . . . received . . . after the close of the evidentiary record." In support of this argument, UCAN cites the Commission's rules of practice and procedure, section 14.3, which governs written comments made by the parties on proposed or alternate decisions. (Cal. Code Regs., tit. 20, § 14.3.) Commission's rules of practice and procedure, section 14.3, reads in part: "Comments shall focus on factual, legal or technical errors in the proposed or alternate decision *and in citing such errors shall make specific references to the record* or applicable law." (Cal. Code Regs., tit. 20, § 14.3, subd. (c), italics added.)

UCAN asserts there are four "facts" which, if not adopted by the Commission, "would have precluded the approval of the CPCN." UCAN describes those "facts" and their impact as follows:

1. Yakout Mansour, the chief executive officer of the CAISO, stated during oral argument: "You cannot expect the developers to, you know, financially committing, financially binding contracts now, many years ahead of time even at the difficult times we have now, within the time frame that we—that is suggested in the alternate decision. You can't." UCAN maintains the Commission's Modified Decision relied "solely" on this statement "for its claim that *regulatory* constraints make a renewable requirement 'unworkable.' " UCAN asserts that the reliance on oral argument was improper and the Commission misinterpreted Mansour's statement.

2. Finding of fact No. 39 of the Decision states: "SDG&E has committed to (1) not contract, for any length of term, with conventional coal generators that deliver power via Sunrise, (2) replace currently approved renewable energy contract deliverable via Sunrise that fails with a viable contract with a renewable generator located in Imperial Valley [in other words, opt for a contract with a renewable generator in Imperial County], and (3) voluntarily raising SDG&E's RPS goal to 33 percent by 2020." UCAN maintains that the evidentiary record contains "no such commitment." Without a citation to the record, UCAN asserts that the reference is found only in the oral argument presented by SDG&E's president and CEO, Deborah Reed, after the evidentiary record was closed and the case submitted. UCAN argues that absent reference to SDG&E's commitment, the Commission "would not have had a

basis to reject the conditions suggested by" Commissioner Grueneich's dissent to the Decision, which UCAN also fails to cite.

3. Without citing to the Decision or Modified Decision, UCAN contends the Commission based its decision on "inexpert representations made in oral argument" consisting of "extra-evidentiary data" tendered by the CAISO in August 2008. UCAN argues that "[h]ad the Commission not relied upon [the CAISO analysis], it would not have had a basis to reject the non-Sunrise Case 13 analysis," which it also fails to explain or cite.

4. The Modified Decision referenced CAISO modeling and the CARB Climate Change Scoping Plan, and stated that "the Decision concludes that whether or not the Sunrise line carries renewables, when projects across the rest of the region are considered, there is no substantial difference in the ultimate GHG impacts." The Decision explained that CARB used estimates provided by the Commission to adopt the 33 percent RPS recommendation. UCAN contends that the Commission improperly relied on the CARB estimates which consisted of unsubstantiated Commission estimates. UCAN maintains that "the Commission created its own factual basis that CARB estimates relied upon to issue a 33% guideline and then reference[d] CARB estimates that [were], in fact, unsubstantiated [Commission] estimates."

In the points and authorities accompanying the petition, UCAN maintains "[t]hese facts are sufficiently material to justify remand of the decision for additional evidentiary scrutiny . . . ." UCAN cites *Southern Pacific Co. v. Public Utilities Com.* (1968) 68 Cal.2d 243 [65 Cal.Rptr. 737, 436 P.2d 889], and reiterates in its reply brief that "the decision must be remanded for failure . . . to contain valid findings of fact for all material issues in the proceeding." As we explain, there are several grounds for rejecting UCAN's argument.

■ We are not persuaded that section 14.3 of the Commission's rules of practice and procedure applies here. By its language, section 14.3 governs *written comments on proposed and alternate decisions*. At minimum, it is inapplicable to the statements made in oral argument. Because UCAN's points and authorities fail to provide the procedural context for the remainder of the challenged "facts," we are unable to determine whether they were included in written comments on proposed or alternate decisions. Furthermore, UCAN offers no other authority to support its argument that the Commission may not consider points offered at oral argument. To the contrary, section 13.13 of the rules of practice and procedure states that the Commission may direct the parties to present oral argument. (Cal. Code

Regs., tit. 20, § 13.13, subd. (a).) "A proceeding shall stand submitted for decision by the Commission *after* the taking of evidence, the filing of briefs, and the presentation of oral argument as may have been prescribed." (Cal. Code Regs., tit. 20, § 13.14, subd. (a), italics added.) The clear inference is that the Commission may consider oral argument along with the evidence and briefs in reaching its decision. We therefore conclude there is no merit in UCAN's argument that the Commission improperly considered the first three challenged "facts" and therefore failed to act in the manner required by law.

We also reject UCAN's argument that the Commission reliance on the CARB estimates improperly circumvented the record. The portion of the Modified Decision cited by UCAN also referenced CAISO modeling, which incorporated the 33 percent RPS goal. UCAN does not dispute the Commission statement that "[T]here is no prohibition against an agency going beyond the factual analysis in the EIR to incorporate policy forecasts that go beyond the physical impacts of the projects themselves." Moreover, other evidence in the record supports the Commission's conclusion that it is in the public interest to reach the 33 percent RPS goal for the electricity sector.

Finally, UCAN fails to explain how remand is justified under *Southern Pacific Co. v. Public Utilities Com., supra,* 68 Cal.2d 243. That case holds that in a CPCN proceeding, the Commission's decision must separately state findings of fact and conclusions of law on all material issues—that is, resolve every issue to reach the ultimate finding of public safety, welfare, convenience and necessity. (*Ibid.*) The Commission appears to have done so. Although UCAN purports not to challenge the sufficiency of the evidence, it attempts a backdoor challenge to the factual findings by arguing the evidence is insufficient if the "facts" challenged here are removed from the Commission's consideration. Because we conclude the Commission properly considered these "facts," there is no ground for remand and no basis for claiming insufficient evidence to support the Commission's findings.

### IV. The Commission Considered the Feasible, Cost-effective Alternatives

Section 1002.3 provides: "In considering an application for a certificate for an electric transmission facility pursuant to Section 1001, *the commission shall consider cost-effective alternatives to transmission facilities that meet the need for an efficient, reliable, and affordable supply of electricity,* including, but not limited to, demand-side alternatives such as targeted energy efficiency, ultraclean distributed generation, as defined in Section 353.2, and other demand reduction resources." (Italics added.) UCAN contends that the Commission violated section 1002.3 by failing to consider (1) the All-Source

Generation Alternative as more cost-effective than Sunrise after correcting a $368 million error; (2) the No-Project Alternative; (3) the "Powers Engineering/UCAN In-Basin Option"; and (4) the reliability of supply in light of seismic risk at the Imperial Valley substation. The Commission and SDG&E respond that UCAN failed to exhaust its administrative remedies, section 1002.3 does not require the Commission to consider *all* feasible alternatives to Sunrise, and the Commission did, in fact, comply with section 1002.3. Although we question whether UCAN exhausted its administrative remedies as to portions of its arguments, we consider and reject the merits of UCAN's claim that the Commission violated section 1002.3.

### A. *Exhaustion of Administrative Remedies*

As we explained, UCAN may not raise in its petition for writ of review any matter not included in the application for rehearing. (§ 1732.) Section 16.1(c) of the Commission's rules of practice and procedure assists in enforcement of section 1732 by requiring that "[a]pplications for rehearing . . . set forth specifically the grounds on which the applicant considers the order or decision of the Commission to be unlawful or erroneous, and *must make specific references to the record or law.*" (Cal. Code Regs., tit. 20, § 16.1, subd. (c), italics added.) That section emphasizes that "[t]he purpose of an application for rehearing is to alert the Commission to a legal error, so that the Commission may correct it expeditiously." (*Ibid.*) Courts of Appeal refuse to consider issues not preserved for judicial review in accordance with section 1732. (See, e.g., *Southern California Edison Co. v. Public Utilities Com.* (2006) 140 Cal.App.4th 1085, 1096, fn. 4 [45 Cal.Rptr.3d 485] [court refused to consider argument that the Commission's decision was unconstitutionally vague]; *Hillsboro Properties v. Public Utilities Com.* (2003) 108 Cal.App.4th 246, 255, fn. 4 [133 Cal.Rptr.2d 343] [interveners precluded from raising an issue of statutory construction]; *Southern Cal. Edison Co. v. Public Utilities Com.* (2002) 101 Cal.App.4th 982, 996 [125 Cal.Rptr.2d 211] [petitioner not allowed to challenge the Commission's failure to make a specific finding required by § 1705].) We believe that in addition to ensuring that the Commission receives timely notice of alleged errors, enforcement of section 1732 and section 16.1(c) of the Commission's rules of practice and procedure discourages frivolous challenges that unnecessarily delay implementation of Commission decisions, thereby conserving agency and judicial resources.

Here, UCAN's 106-page application for rehearing contains only two references to section 1002.3, and neither reference cites the text of the statute. The first reference appears as a footnote following UCAN's introductory statement that "the Commission fails to properly interpret and apply State law in authorizing the CPCN." (Fn. omitted.) The footnote reads: "The laws

violated include, but are not limited to Public Utilities Code Sections 451, 900, 1000, 1002, *1002.3*, 1708, 1757." (Italics added.) With limited exceptions not relevant here, UCAN did not link its 18 claims of error to the specific statute or statutes that the Commission allegedly violated. The second reference to section 1002.3 is found under the heading *"The Decision fails to consider the true costs of Sunrise to the state's ratepayers."* After arguing that the Decision failed to consider the true costs of Sunrise, which should have included the cost of purchasing renewable power from Imperial Valley sources, UCAN stated that "the final decision makes no such assessment and pursuant to state laws, including . . . Section 1002.3, it should have." That specific issue is not before us in this petition for writ of review.

As to the four alternatives UCAN claims the Commission failed to consider, the record shows that UCAN raised some of those claims of error on different theories in the application for rehearing. For example, UCAN argued in its application for rehearing that the Commission's subtraction of $368 million from the assumed capital cost of the All-Source Generation Alternative had "no basis in fact and no evidentiary support in the record." It characterized the computation error as a "material and specific factual error[]," making no mention of section 1002.3. Similarly, UCAN's lengthy argument regarding the Commission's failure to consider its No-Project Alternative primarily addressed the Commission's obligations under CEQA. The argument focused largely on the sufficiency of the evidence to support the analysis contained in the FEIR. UCAN cited SDG&E's failure to comply with statutory law. Nowhere did UCAN specify that the Commission failed to comply with section 1002.3. This record shows that arguments UCAN cast as challenges to the sufficiency of the evidence in its application for rehearing, it now argues as legal error. By changing its theory of relief, UCAN violated section 1732 and section 16.1 of the Commission's rules of practice and procedure.

While we question whether UCAN's use of shifting theories and its broad brush treatment of section 1002.3 issues in the application for rehearing satisfy the specificity requirements of section 1732 and section 16.1(c) of the Commission's rules of practice and procedure, we believe UCAN provided the Commission with sufficient notice to respond to its claims. We therefore proceed to discuss the merits of UCAN's claims.

B. *Obligations Under Section 1002.3*

UCAN suggests that section 1002.3 requires the Commission to consider *"all* feasible alternatives to the proposed Sunrise project." (Italics added.) In support of this proposition, UCAN cites *Southern Pacific Co. v. Public Utilities Com., supra,* 68 Cal.2d 243, and *Ventura County Waterworks Dist. v.*

*Public Util. Com.* (1964) 61 Cal.2d 462 [39 Cal.Rptr. 8, 393 P.2d 168], both of which predate by decades the adoption of section 1002.3. In the former case, the Supreme Court simply held that the Commission was required to separately state the findings of fact and conclusions of law on which it based an ultimate finding. (68 Cal.2d at p. 244.) In the latter, the Supreme Court held the Commission could not reasonably determine whether a CPCN should be granted without considering the *single* alternative offered by the water district. (61 Cal.2d at p. 464.) This case is distinguishable on the facts and the law.

 The plain language of section 1002.3 states that when considering a CPCN involving an electric transmission facility under section 1001, the Commission must also consider "cost-effective alternatives," which include "demand-side alternatives." (§ 1002.3.) Nothing in section 1002.3 says that the Commission must consider *all* cost-effective alternatives. As we explained, the Commission's evaluation of environmental issues in the FEIR informed its decision in the CPCN proceedings. Using guidelines established by CEQA and NEPA, the Commission identified "nearly 100 potential alternatives . . . ranging from minor adjustments . . . to entirely different transmission line routes, to alternative energy technologies, as well as non-wires and system alternatives." As a practical matter, we agree with the Commission and reject as unreasonable UCAN's interpretation of section 1002.3 suggesting that an agency is required to consider "every possible alternative and every possible permutation of every alternative in determining whether to approve a CPCN . . . ."

C. *The Commission Complied with Section 1002.3*

1. *The All-source Generation Alternative*

UCAN contends in its petition for writ of review, filed in August 2009, that the Commission violated section 1002.3 by failing to correct a $368 million error that would have made an All-Source Generation Alternative more cost-effective than Sunrise. UCAN asserts that the Commission manipulated the numbers in favor of Sunrise in order to "salvage its CPCN decision." In December 2009, the Commission issued decision No. 09-12-004 (Correcting Decision) which corrected errors in the Decision and Modified Decision regarding the ratio for firm-to-installed capacity of solar photovoltaic (PV) power and the calculation of California Solar Initiative (CSI) "sunk" solar PV costs. The Correcting Decision found that correction of the two errors resulted in recalculated costs of $436 million being deducted from the capital cost of the All-Source Generation Alternative but did not change the Commission's findings regarding the net benefits of the All-Source Generation Alternative. SDG&E and the Commission cite the Correcting Decision in

their answers to the petition. Without elaboration, UCAN states in its reply brief that SDG&E's claim that the Correcting Decision "corrected a minor error cited by UCAN's Petition" lacks support in the record. Taking judicial notice of the Correcting Decision (Evid. Code, § 452, subd. (c)) we agree with SDG&E and the Commission that UCAN's allegations of computational error are moot because the Commission did correct it.

## 2. *The No-Project Alternative*

UCAN argues that the Commission violated section 1002.3 by failing to consider its specific version of the No-Project Alternative, "which consisted of a number of transmission, demand-side and supply-side steps that would replace most all of the need for the Sunrise line." It also asserts that after acknowledging and "accepting" UCAN's key points, the Commission declined to accept or reject the UCAN No-Project proposal without further discussion. There is no merit in UCAN's arguments.

First, nothing in section 1002.3 requires consideration of all feasible alternatives.

Second, UCAN failed to identify the specific grouping of alternatives it now defines as its No-Project Alternative. UCAN's expert, David Marcus, prefaced his testimony on the UCAN No-Project Alternative with the statement: "The proposal below does not contain one, two or even three discrete replacements for [the Proposed Project]. Instead, UCAN offers a panoply of options from which SDG&E can choose." These options included (1) relieving import and outflow limits at the Miguel substation; (2) upgrading path 44, the north-south transmission lines within the SDG&E service area; (3) upgrading current import capacity in other locations; (4) reconsidering the southwest power link II concept, which involved a second 500 kV line between the IV substation and Miguel substation; (5) pursuing the Mexico light alternative to obtain power from Mexico on a regular basis; (6) counting advanced metering infrastructure (AMI) as a future resource; and (7) working with CAISO to revise its planning model that assumes the largest single unit in the SDG&E system is out of service. However, UCAN cites two groupings of alternatives in its petition: first, the "very specific alternatives" listed in Marcus's testimony; and second, the "crux" of UCAN's No-Project proposal. The latter consisted of (1) upgrading the output limit of the Miguel substation; (2) upgrading path 44; (3) developing the Carlsbad Energy Center; and (4) determining the availability of out-of-state renewables. From the petition alone, it is easy to understand why the Commission and SDG&E described UCAN's No-Project Alternative as an "ever-shifting" and "moving target."

Third, the Commission did, in fact, consider the various elements of UCAN's No-Project Alternative in both the CEQA and CPCN proceedings as part of the general No-Project Alternative, the In-Area Renewable Generation Alternative, and the All-Source Generation Alternative. The Decision expressly referenced the suggested upgrades at the Miguel substation and upgrades to path 44. Power obtained from the Carlsbad Energy Center and out-of-state renewable sources was included in the analytical baseline used to generate the models compared in the CPCN proceedings. We conclude the record fails to support UCAN's claim that the Commission violated section 1002.3, and UCAN's argument was simply a means to reargue the evidence.

### 3. *The Powers Engineering/UCAN Option*

UCAN also contends the Commission failed to consider "the hybrid" it now calls the "Powers Engineering/UCAN In-Basin Option." We found no argument in the application for rehearing that connected the changes proposed by UCAN and Powers Engineering for development of in-basin PV power with a violation of section 1002.3. Little elaboration is provided in the petition and reply brief. Thus, we conclude that this claim suffers from the same deficiencies as UCAN's No-Project Alternative.

The Commission considered and rejected UCAN's estimate that San Diego had 7,400 megawatts of solar PV potential when analyzing the In-Area Renewable Generation Alternative stating: "Aggressive projections show that the San Diego region has approximately 7,400 MW of solar PV potential on commercial and residential structures; more modest projections show a potential for over 4,100 MW of solar rooftop PV. Regardless of the wide range between these estimates, even the low end represents substantial potential." (Fns. omitted.)

### 4. *Seismic Activity*

UCAN contends that the Commission violated section 1002.3 by ignoring UCAN's concern that seismic activity in Imperial County could impact reliability of supply and therefore undermine a justification for the Proposed Project. We reject this contention. Section 1002.3 does not require that the Commission consider the impact of seismic events on a proposed project. In any event, the FEIR addressed the impact of a seismic activity on the Proposed Project, including transmission lines. It determined that risk of power interruption from a seismic event was less than significant.

## DISPOSITION

UCAN's petition for writ of review is denied.

Haller, Acting P. J., and McDonald, J., concurred.