Filed 8/25/16  Rothman v. City of Los Angeles CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBERT ROTHMAN, | B258670 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC476306) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Affirmed.

McNicholas & McNicholas, Matthew S. McNicholas, Alyssa K. Schabloski; Esner, Chang & Boyer, Stuart B. Esner and Andrew N. Chang for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, and Paul L. Winnemore, Deputy City Attorney, for Defendant and Respondent.

_____

## INTRODUCTION

Robert Rothman, a police officer with the Los Angeles Police Department (LAPD), appeals from a summary judgment in favor of the City of Los Angeles on his causes of action for religious discrimination, harassment, and retaliation. His complaint alleges the LAPD removed Rothman from his position in the Liaison Unit of the LAPD and reassigned him to positions he considered less desirable due to his religion and in retaliation for reporting violations of federal and state law. He also alleges he was harassed while in the Liaison Unit. The trial court granted summary judgment in favor of the City.

On appeal, Rothman contends there are triable issues of material fact as to each cause of action, precluding summary judgment. We conclude that the City presented evidence of legitimate, nondiscriminatory reasons for its employment action. In response, Rothman failed to present sufficient admissible evidence creating a triable issue of material fact as to the City's showing and presented no evidence of intentional discrimination. We also conclude that Rothman has not shown that he engaged in protected activity for his retaliation causes of action and has not shown for his harassment claim that the challenged conduct of LAPD officers was sufficiently severe or pervasive to constitute actionable harassment. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Rothman, who is Jewish, has been employed as an LAPD police officer since 1996. From approximately November 12, 2006, to November 8, 2009, he was assigned to the Major Crimes Division of the Counter-Terrorism and Special Operations Bureau (CTSOB).[1] His rank while in the Major Crimes Division was Police Officer III, and his duties involved outreach to the Jewish community, consulates, and private sector security, as well as protective intelligence details.

---

[1]     CTSOB was originally named the Counter-Terrorism Criminal Intelligence Bureau, but in October 2010, the name was changed to CTSOB.

A.     *Assignment to Liaison Unit*

Deputy Chief Michael Downing served as the commanding officer of the CTSOB. In approximately 2006, Downing created the Liaison Unit within the CTSOB to reach out and build trust between the LAPD and various religious communities. As part of the trust building process, Downing expected Liaison Unit officers of all faiths to set an example for the religious communities, to become involved in outreach to the various religious communities, and to assist each other with outreach activities and events at mosques, churches, and synagogues. In November 2009, Downing reassigned Rothman from the Major Crimes Division to the Liaison Unit. Downing selected Rothman for the Liaison Unit, in part, because of Rothman's connections with the Jewish community. Rothman's direct supervisor, Detective Michael Kozak, and Kozak's supervisor, Lieutenant Mark Stainbrook, told Rothman that his job duties in the Liaison Unit would be the same as his prior job duties in the Major Crimes Division.

Soon after being assigned to the Liaison Unit, Rothman learned the Liaison Unit focused 90 percent of its efforts on outreach to the Muslim community. Officers in the unit were expected to work on Fridays and were expected to visit mosques during Friday evening prayers to get to know and show they were a part of the community. Officers, however, were not required to engage in prayers while visiting mosques, unless they chose to do so. Rothman preferred to have Fridays off, but did not attach any religious significance to Fridays.

During Rothman's time with the Liaison Unit, Downing noticed that Rothman was reluctant to attend Muslim outreach events, resisted attending Friday evening prayer services at mosques, and was unwilling to involve fellow Muslim officers in his outreach to the Jewish community. To some officers in the unit, Rothman appeared unhappy in the unit and uninterested in participating in both outreach to the Muslim community and interfaith activities between the Jewish and Muslim communities.

While in the Liaison Unit, Rothman began to feel that there was an undercurrent of anti-Semitism within the unit and believed he was being harassed. Rothman felt he did

3

not receive the same support for his outreach activities to the Jewish community as officers who conducted outreach to the Muslim community.

In mid-2010, during a meeting with representatives from the mayor's office and other law enforcement agencies, a fellow officer in the Liaison Unit asked Rothman about the sidelocks worn by Orthodox Jewish men. The officer twirled his finger by the side of his head to mimic curls and asked Rothman what they were called and why they were worn. The officer referred to them as "whoopty doos." Rothman said he did not know what they were called and told the officer to "go look it up." The officer asked Rothman the question three or four times during the meeting and laughed. Kozak was also present and asked the same question. Although Rothman is not an Orthodox Jew, he felt offended. Sometime later, Rothman told Stainbrook, who was present at the meeting, that Rothman felt the comments were anti-Semitic. Stainbrook asked Rothman if he intended to make a formal complaint, but left Rothman with the impression that Stainbrook preferred Rothman not do so. Rothman did not initiate a formal complaint at that time.

In approximately June 2010, Rothman and other officers were assigned to help with crowd control during the Los Angeles Lakers' championship victory parade. A sergeant, who was not ordinarily in Rothman's chain of command and had never worked with him, was put in charge of officers at the parade, including Rothman. Rothman first reported to the Sports Arena for roll call with other officers and was then told to report to a location near the Staples Center at a certain time. All of the other officers reported to the Staples Center except for Rothman. While in transit to the Staples Center, Rothman received a telephone call from his wife asking him to come home due to a family emergency. Rothman received approval from Stainbrook, who was not at the event, and left the event without first obtaining approval from a supervisor in his chain of command

4

at the event. The sergeant in charge of officers at the event completed a negative Employee Comment Sheet[2] documenting Rothman's failure to follow proper procedure.[3]

In August 2010, Rothman made a presentation on terrorism at the Museum of Tolerance and saw Officer Sameer Abdelmottlep at the presentation. Abdelmottlep was a Police Officer II, who was assigned to the Liaison Unit around the same time as Rothman. Abdelmottlep, who is Muslim, was selected for the unit to conduct outreach to the Muslim and other religious communities. When Rothman and Liaison Unit Officer Gary Crump asked Abdelmottlep why he was at the event, Abdelmottlep stated that Kozak had asked Abdelmottlep to watch Rothman and Crump. After the presentation, Abdelmottlep returned to the office. Kozak subsequently called Rothman to ask why he and Crump had not yet returned to the office.[4]

On another occasion Kozak sent a text message to Rothman telling him to provide a report of his weekly activities before engaging in them. Rothman asked if everyone in the unit was required to provide such a report. Kozak responded by asking if Rothman was challenging him. Rothman believed that he was singled out for scrutiny and felt like an outsider in the Liaison Unit.

On another occasion, Rothman applied to a commander of the LAPD for a work permit for Wilshire Boulevard Temple to provide off-duty security services, but the request was denied on the ground that it would be a business conflict. After being informed of the denial, Rothman pointed out that a fellow officer had received permits to

---

[2]     An Employee Comment Sheet is used to document an employee's performance and can either be positive or negative. A Notice to Correct Deficiencies is a bit more severe and is used to address a deficiency.

[3]     When asked if he believed the negative comment was motivated by his being Jewish, Rothman declared in his deposition, "I don't know."

[4]     When asked in his deposition if he believed he was being watched because he was Jewish, Rothman declared, "I don't know. You have to ask them."

5

provide security services for two theatres and a concert hall in the city, but Rothman still did not receive the requested permit.

On March 10, 2011, Rothman attended an office celebration for Downing's birthday. Downing displayed an article that had been published in the New York Times regarding the efforts the LAPD officers were making to gain the trust of the Muslim community. The article featured a photograph of Officer Abdelmottlep and a second officer in the unit in full uniform praying in a mosque during an outreach effort. Downing was pleased with the article, but Rothman became upset and stated to another Liaison Unit officer, "Bullshit" or "This is . . . bullshit." Rothman further stated, "They are not allowed to pray in uniform." Rothman also stated to one of the officers captured in the photograph, "You guys look stupid." The officer discussed Rothman's comments with Sergeant Jim Gordon, who served as Rothman's immediate supervisor for a period of time while Kozak was on military leave. Someone else at the party began to tease Abdelmottlep about the photograph, and Rothman exchanged words with Abdelmottlep, which visibly upset Abdelmottlep.[5]

In March 2011, Sergeant Gordon met with Rothman to discuss problems in the unit. During the meeting, Gordon stated to Rothman that there were no "franchise players" within the unit and also invited him to discuss any problems Rothman observed in the unit. In response, Rothman told Gordon about unethical behavior Rothman believed was being engaged in by some officers in the Liaison Unit. Specifically, he stated that he had heard some officers would chase after Muslim women while on duty. Rothman also stated that he had heard that a fellow Liaison Unit officer performed off-duty work, used a car provided by the city while performing off-duty work, and arranged off-duty work for supervisors. Further, Rothman stated that the officer would receive

---

[5]     According to Rothman, a secretary was talking to Abdelmottlep when Rothman interjected and said, "Don't say anything else. He just said that he would never do that again because he didn't want to be in the newspaper." Abdelmottlep then stated, "Yeah, I said that. You got a problem with that?" Rothman responded, "No, I don't have a problem with that; you have the problem with it, not me."

free items from his off-duty work that he would then give to command staff. Rothman also stated that, while working as a reserve officer coordinator, the officer had accepted gifts from reserve officers, including a used wet bar. Additionally, Rothman stated that several Liaison Unit officers sometimes arrived late for work or did not show up at all. In response, Gordon covered his ears and asked Rothman if he was recording the conversation.

B.      *Removal from Liaison Unit and Reassignments*

Several days after Rothman's meeting with Gordon, Downing removed Rothman from the Liaison Unit. Downing perceived that Rothman wanted to work primarily with the Jewish community and was uncomfortable or reluctant to attend events at mosques and Muslim outreach events. In particular, Downing observed from the beginning of Rothman's time with the Liaison Unit that Rothman refused to attend Friday evening prayer services at mosques. Although Downing's declaration stated he had several conversations with Rothman about being more involved in outreach to the Muslim community, Rothman avoided involvement in Muslim outreach and avoided involving Muslim LAPD officers in his outreach to the Jewish community. Downing was also concerned about the insensitive comment Rothman made to Abdelmottlep about the New York Times article, which featured a photograph of Abdelmottlep and a second officer praying in a mosque during an outreach effort while on duty. Downing believed removing Rothman from the Liaison Unit would assist with unit cohesion and protect Rothman from getting himself in further trouble.

After removing Rothman in March 2011 from the Liaison Unit, Downing loaned Rothman to the Emergency Operations Division (EOD) until a more permanent assignment became available. Downing had no input on the assignments Rothman received while on loan to other divisions. While on loan, Rothman was assigned to the Photo-Red Light Enforcement Section. Rothman had no experience with that work and was given no particular tasks to perform. After a few weeks, Rothman requested an assignment with the training division to work at a magnet school. Downing agreed to

7

assign him there on loan for approximately one month. Rothman applied for a permanent job with the division, but was not selected for the position.

Meanwhile, Downing offered Rothman what Downing characterized as "a great job" opportunity and "coveted position" in the Major Crimes Division working with the Eurasian task force, a federal gang task force. The job duties involved performing detective work with various federal law enforcement agencies and the Glendale Police Department, as well as all-night surveillance of Armenian criminal suspects. After spending one day with the task force, Rothman felt the job duties did not suit him and that he did not have enough training to perform them. Rothman asked for a different assignment and was reassigned to subpoena control within the Major Crimes Division. Rothman considered the assignment a light-duty assignment and undesirable, and believed he was being punished. Rothman served in the position for approximately one month and requested to be transferred.

On May 11, 2011, Gordon issued and Downing approved a Notice to Correct Deficiencies. The Notice to Correct Deficiencies related to Rothman's exchange of words with Abdelmottlep on March 10, 2011. It stated regarding Rothman's comments, "Comments of this nature foster the perception of discrimination, create anger and animosity in the workplace and diminish the effectiveness of personnel." The notice ordered Rothman not to make similar comments in the future. During a meeting regarding the notice, Downing told Rothman he was no longer to conduct outreach to the Jewish, business, or other communities.

On May 17, 2011 Downing initiated a formal administrative transfer of Rothman. The transfer request sets forth three divisions where Rothman wished to be transferred. Rothman was transferred to West Los Angeles Division, which Rothman had listed as one of his preferences. When Rothman told Downing that he would prefer a transfer to Wilshire Division, Downing arranged for Rothman to work at Wilshire Division on loan from West Los Angeles Division until he was permanently transferred to the Wilshire Division. Rothman's responsibilities in the Wilshire Division involve outreach to the

8

Jewish community, consulates, and the private sector, among others, which Rothman enjoys.

C.    *Trial Court Proceedings*

Rothman filed a complaint against the City in January 2012 alleging three causes of action under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.): (1) religious discrimination; (2) retaliation; and (3) harassment.  He alleges a fourth cause of action under Labor Code section 1102.5, subdivision (b),[6] for retaliation.  Rothman alleges the LAPD subjected him to adverse employment actions because he is Jewish and in retaliation for reporting inappropriate workplace conduct.  He also alleges he suffered harassment while in the Liaison Unit,[7] and that the LAPD violated Labor Code section 1102.5, subdivision (b), by retaliating against him for disclosing information concerning violations of the FEHA and federal and state law.

Following discovery, the City filed a motion for summary judgment or, alternatively, summary adjudication of each cause of action, as well as declarations and other documents in support of the motion.

Rothman filed an opposition to the motion, supporting documents, and objections to evidence submitted by the City.

On July 16, 2014, the trial court granted summary judgment and summary adjudication in favor of the City.  The court overruled all of Rothman's evidentiary objections.  The trial court also entered a judgment in favor of the City.

Rothman timely appealed from the judgment.  On appeal, Rothman contends the evidence presented in opposition to the summary judgment motion creates triable issues of material fact as to each of his four causes of action.

---

[6]    Rothman also named the LAPD, the chief of police, and Downing as defendants. Rothman later dismissed the individual defendants.

[7]    The complaint alleges Rothman was harassed due to a physical disability.  It does not allege harassment due to Rothman's religion.

## DISCUSSION

A.      *Applicable Standards*

We review an order granting summary judgment de novo, applying the same legal standard as the trial court. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*). On a motion for summary judgment, we must determine as to each cause of action whether "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see *Guz, supra*, 24 Cal.4th at p. 334; *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 308). A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2).) The defendant can satisfy its burden by presenting declarations, depositions, and other evidence that negates an element of the cause of action or may show through factually devoid discovery responses that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to establish an essential element. (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587; *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.) If the defendant meets its burden, the burden then shifts to the plaintiff to present specific facts, not mere allegations, showing that a triable issue of one or more material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).)

We must conduct an independent review of the record, considering all the evidence set forth in the moving and opposition papers, except evidence to which objections were made and sustained by the trial court, and all inferences reasonably drawn from the evidence. (Code Civ. Proc., § 437c, subd. (c).) We view the evidence in the light most favorable to the party opposing summary judgment, liberally construing the opposing party's submissions, strictly scrutinizing the moving party's evidence, and resolving all doubts concerning the evidence in favor of the opposing party. (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500; *Sandell v. Taylor-Listug, Inc.*, *supra*, 188 Cal.App.4th at p. 308). "We must affirm a summary judgment if it is correct

10

on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.)

B.     *Governing Law*

FEHA makes it unlawful to discriminate against a person in the terms, conditions, or privileges of employment based on the person's religion or other protected status. (Gov. Code, § 12940, subd. (a).) "[D]iscrimination refers to bias in the exercise of official actions on behalf of the employer . . . ." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 707.)

FEHA also makes it unlawful to subject an employee to an adverse employment action because the employee opposed conduct that the employee reasonably and in good faith believed to be unlawful under FEHA, such as unlawful discrimination. (Gov. Code, § 12940, subd. (j)(1); *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042-1043; *Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 209-210.) Similarly, Labor Code section 1102.5, subdivision (b), prohibits an employer from retaliating against an employee for disclosing information to a government or law enforcement agency if the employee had reasonable cause to believe that the information disclosed a violation of a state or federal law or regulation.[8] (*Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1345; *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 469.)

FEHA also makes it unlawful to harass an employee because of the employee's religion or other protected status, or to fail to take immediate and appropriate corrective action to prevent harassment. (Gov. Code, § 12940, subd. (j)(1).) "[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable

---

[8]     An employee's disclosure to his or her own employer is a disclosure to a government or law enforcement agency if the employer is a government agency. (Lab. Code, § 1102.5, subd. (e); *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 825-826.)

because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.*, *supra*, 47 Cal.4th at p. 706.)

C.      *The Trial Court Properly Granted Summary Judgment on Rothman's Discrimination and Retaliation Causes of Action*

To determine whether summary judgment is appropriate on discrimination and retaliation causes of action brought under the FEHA, as well as retaliation causes of action brought under Labor Code section 1102.5, subdivision (b), courts apply the burden-shifting test formulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668].[9] (*Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at pp. 1042-1043 [test applied to FEHA retaliation claim]; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [same]; *Guz*, *supra*, 24 Cal.4th at p. 354 [test applied to FEHA discrimination claim];

_____

[9]      In *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. 792, the United States Supreme Court set forth a burden-shifting analysis for use at trial to prove discriminatory intent in disparate treatment employment discrimination cases under title VII of the Civil Rights Act of 1964. (*Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 254, fn. 8 [101 S.Ct. 1089, 67 L.Ed.2d 207]; *Guz*, *supra*, 24 Cal.4th at p. 354; *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 122-123.) Under this analysis, the employee must initially establish at trial a prima facie showing of discrimination by demonstrating that (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position sought or performing competently in the position held; (3) the plaintiff was terminated, demoted, denied an available job or suffered some other adverse employment action; and (4) the circumstances suggest a discriminatory motive. (*Guz*, at p. 355). If the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises. (*Ibid.*) "[T]he burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer].'" (*Ibid.*) If the defendant employer satisfies its burden, the presumption disappears and the plaintiff must show that the employer's reasons are merely a pretext for discrimination or offer other evidence of a discriminatory motive. (*Id.* at p. 356; *Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 964-965 (*Swanson*).)

*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal. App.4th 1102, 1108-1109 [test applied to FEHA and Labor Code retaliation claims].) The *McDonnell Douglas* test was designed to facilitate the determination at trial, not summary judgment proceedings, of discriminatory intent in cases where there is no direct evidence of such intent. (*Texas Dept. of Community Affairs v. Burdine*, *supra*, 450 U.S. at p. 254, fn. 8; *Guz*, at p. 354; *Wallace v. County of Stanislaus*, *supra*, 245 Cal.App.4th at p. 123.) Courts have therefore modified the analysis for summary judgment proceedings to reflect under California law that a defendant employer moving for summary judgment bears the initial burden of either negating an element of the plaintiff's cause of action or establishing a defense to the claim. (Code Civ. Proc., § 437c, subd. (p)(2); *Guz*, at p. 354; *Swanson*, *supra*, 232 Cal.App.4th at pp. 965-966).

Thus, a defendant employer moving for summary judgment on a discrimination or retaliation cause of action bears the initial burden of showing that the employee's cause of action lacks merit. (Code Civ. Proc., § 437c, subd. (p)(2); *Swanson*, *supra*, 232 Cal.App.4th at pp. 965-966) The employer may satisfy this burden by presenting admissible evidence that at least one of the prima facie elements for the employee's cause of action is lacking. (*Swanson*, at pp. 965-966) Alternatively, the employer may show that the challenged conduct or action was based on legitimate reasons that did not involve discrimination or retaliation. (*Ibid.*; see also *Guz*, *supra*, 24 Cal.4th at p. 357.) "'[L]egitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*" or retaliation. (*Guz*, at p. 358.) If the employer presents evidence that would permit a trier of fact to find, more likely than not, that the employer acted for a legitimate, nonprohibited reason, the burden shifts to the plaintiff to produce admissible evidence that raises a triable issue of material fact. (*Ibid.*) The employee must present "specific" and "substantial" evidence that the employer's stated reasons for the employment action are untrue or pretextual. (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433; see *Swanson*, at pp. 964-965; *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097-1098.) The employee cannot simply rely on his or her subjective beliefs,

13

mere allegations or denials, or uncorroborated and self-serving declarations or testimony to create a triable issue of material fact. (*King*, at p. 433; see also Code Civ. Proc. § 437c, subd. (p)(2).) "'"[T]he [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could"'" find the reasons lacked credibility and thus be able to infer the employer's true motives were based on unlawful discrimination. (*Sandell v. Taylor-Listug, Inc.*, *supra*, 188 Cal.App.4th at p. 314.)

### 1.     *FEHA Discrimination Cause of Action*

Rothman argues there is a triable issue of one or more material facts for his discrimination cause of action because he produced sufficient evidence to establish a prima facie case for discrimination and because he produced ample evidence showing he was removed from the Liaison Unit due to religious animus. We need not decide whether Rothman has made a sufficient showing to establish his prima facie case, because we find Rothman has not satisfied his burden of presenting evidence that the City's proffered reasons for removing Rothman were false and that the City's true motives were discriminatory.[10] (See, e.g., *Guz*, *supra*, 24 Cal.4th at p. 357 [declining to decide prima facie burden issue and affirming grant of summary judgment based on employer's showing of legitimate reasons, unrelated to discrimination, for eliminating plaintiff's employment position].)

---

[10]     The City argues that Rothman cannot establish a prima face case for discrimination because he cannot show evidence demonstrating he was performing competently in the Liaison Unit or that he suffered an adverse employment action. The trial court concluded Rothman had not shown sufficient evidence of an adverse employment action or that the employment action was motivated by discriminatory animus. Further, it concluded there was substantial evidence Rothman's removal from the Liaison Unit was based on a legitimate business reasons and that there was no evidence of pretext.

The City presented the declaration of Downing and other evidence demonstrating that Rothman's removal from the Liaison Unit was based on his performance while in the unit. In particular, Downing declared that he created the Liaison unit in 2006 to reach out and build trust between and among the LAPD and the Muslim, Jewish, and other religious communities. Downing also declared that Rothman resisted participation in outreach to the Muslim community while in the Liaison Unit and was reluctant to visit mosques during Friday evening prayer services. Downing further declared that he spoke to Rothman several times about the need for Rothman to become more involved in outreach to the Muslim community, but Rothman seemed to avoid involvement and also avoided involving Muslim LAPD officers in his outreach to the Jewish community. Some of Rothman's fellow officers also observed that Rothman appeared uninterested in participating in both outreach to the Muslim community and interfaith activities between the Jewish and Muslim communities. Downing was concerned about Rothman's insensitive comments to Abdelmottlep. Downing declared that he removed Rothman from the Liaison Unit for the benefit of unit cohesion and to prevent Rothman from getting himself in trouble. The City thus proffered facially legitimate reasons for removing Rothman from the Liaison Unit. The burden therefore shifted to Rothman to present evidence supporting an inference of intentional discrimination.

Rothman argues in his opening brief, "There is ample evidence which tends to prove that the City's actions against [p]laintiff were motivated by religion. In particular, the disparaging comments about Jewish culture, faith and 'hairstyle' appearance, taking the CTSOB position away from [p]laintiff despite his consistently outstanding performance, and demoting him to administrative and clerical positions, establish sufficient, direct and circumstantial evidence to prove that the negative employment actions were motivated by religion." Rothman provides no citation to the appellate record in support of this argument. In fact, Rothman provides no record citation

15

anywhere in the argument portion of his opening brief and cites the record only in the statement of facts.[11]

Nevertheless, we have reviewed the record, including the facts set forth in Rothman's statement of facts. Rothman's reference to "the disparaging comments about Jewish culture, faith and 'hairstyle' appearance" apparently refers to the incident in which a fellow Liaison Unit officer and Kozak repeatedly asked him about the sidelocks worn by Orthodox Jewish men and laughed.[12] Construed in a light most favorable to Rothman, these comments were tactless and offensive. But this evidence is insufficient to support a reasonable inference that Downing or the LAPD was motivated in whole or in part by religious bias in the decision to remove Rothman from the Liaison Unit. Rothman has not produced evidence showing Downing personally engaged in conduct disparaging to individuals of Jewish faith generally or to Rothman personally based on his religion. Although Downing stated as one of his reasons for Rothman's removal that Downing believed Rothman would be more comfortable conducting outreach to the

---

[11] An appellate brief must support each and every reference to a matter in the record, whether factual or procedural, by citing to the volume and page number of the record where the matter appears, regardless of where the reference occurs in the brief. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 96-97, fn. 2.) Record citations in the statement of facts alone are insufficient. An appellate brief must also cite the record when referencing matters in the record in the argument. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16.) A reviewing court may deem an argument waived or forfeited if the appellant fails to support the argument with necessary record citations. (*Utility Consumers' Action Network v. Public Utilities Com.* (2010) 187 Cal.App.4th 688, 697.)

[12] The other matters referenced in Rothman's argument, "taking the CTSOB position away from [p]laintiff despite his consistently outstanding performance, and demoting him to administrative and clerical positions," concern employment actions and Rothman's qualifications for his position with the Liaison Unit. Those incidents do not tend to show that Rothman's religion was a factor in any employment decision. Rothman also has not shown that Downing had anything to do with the particular assignment Rothman received while on loan to other divisions. Further, the record demonstrates that the number of different assignments Rothman experienced after being removed from the Liaison Unit was due in large part to his requests to be reassigned.

16

Jewish community, the evidence in the record demonstrates that this reasoning was based on Rothman's conduct while in the Liaison Unit of having limited involvement in outreach to the Muslim community, not based on Rothman's religion. Rothman does not argue, nor is there any evidence in the record to suggest, that Downing regarded Rothman as incapable of performing his duty in the Liaison Unit of reaching out to the Muslim or other religious communities because Rothman was Jewish.

Moreover, the fact that Rothman received only one negative comment card while in the Liaison Unit and was issued a notice of deficiency two months after being removed from the unit does not support a rational inference that Downing acted with an unlawful discriminatory purpose when removing Rothman. Rothman does not deny or produce sufficient evidence to contradict Downing's statement that he warned Rothman several times that his Liaison Unit assignment required him to become more involved in outreach to the Muslim community. Nor has Rothman produced evidence contradicting Downing's observation that, despite these conversations, Rothman continued to avoid being involved in Muslim outreach while in the Liaison Unit and avoided involving his fellow Muslim officers in Jewish outreach. In short, Rothman has not demonstrated by specific and substantial evidence that Downing's stated reasons for removing Rothman from the Liaison Unit were untrue or a pretext for an unlawful discriminatory motive. The absence of prior serious official discipline and delay in issuing the notice of deficiency thus does not support a reasonable inference that Downing's decision to remove Rothman from the Liaison Unit was motivated in whole or in part by religious animus. Rothman's subjective belief that the LAPD had discriminated against him is therefore insufficient to create a triable issue of material fact for his FEHA discrimination cause of action.

2.  *FEHA and Labor Code Section 1102.5 Retaliation Causes of Action*

To establish a prima facie case of retaliation under the FEHA and Labor Code section 1102.5, subdivision (b), an employee must show: (1) the employee engaged in a protected activity; (2) the employer subjected the employee to an adverse employment

action; and (3) there is a causal link between the adverse employment action and the protected activity. (*Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at p. 1042; *McVeigh v. Recology San Francisco*, *supra*, 213 Cal.App.4th at p. 468.) An employee engages in protected activity for purposes of a FEHA retaliation claim when the employee opposes conduct that is unlawful under the FEHA or opposes conduct the employee reasonably and in good faith believes to be unlawful under FEHA. (*Yanowitz*, at p. 1043; *Kelley v. The Conco Companies*, *supra*, 196 Cal.App.4th at pp. 209-210.) An employee engages in protected activity for purposes of Labor Code section 1102.5, subdivision (b), when the employee discloses to a government or law enforcement agency information that he or she has reasonable cause to believe discloses a violation of state or federal law or regulation. (Labor Code § 1102.5(b); *McVeigh v. Recology San Francisco*, *supra*, 213 Cal.App.4th at p. 469.)

The City argues Rothman cannot establish an element of his retaliation causes of action, namely, that he engaged in protected activity, because there is insufficient evidence in the record to show that he reported any conduct that he reasonably and in good faith believed to be unlawful under the FEHA. Further, the City argues Rothman cannot establish an element of his retaliation cause of action under the Labor Code because there is insufficient evidence in the record to show that he reported any conduct that he reasonably and in good faith believed to be unlawful under federal or state law. The burden thus shifted to Rothman to produce sufficient evidence raising a triable issue of material fact that Rothman engaged in protected activity and that such activity was the cause for his removal from the Liaison Unit. From our review of the record, we conclude Rothman has failed to satisfy his burden.

In support of a prima facie case for each of his retaliation causes of action, Rothman argues in his opening brief that "he suffered adverse employment action because of his complaints to Downing and other supervisors about discrimination."[13] He

---

[13] Rothman claims the adverse employment action began with his removal from the Liaison Unit and continued with his subsequent reassignments. He also argues,

18

also states, "plaintiff's complaints about Downing's religiously motivated mistreatment of plaintiff constituted a 'protected activity' under . . . FEHA." In addition, he argues that he engaged in protected activity because he "reported the anti-Semitism he felt in the unit . . . [and] also reported what he reasonably believed to be violations of separation of church and state . . . [concerning] the inappropriateness of Muslim officers praying on-duty, and in uniform . . . ." Rothman does not elaborate on these points and fails to cite to any evidence in the record supporting his argument. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *Utility v. Consumers' Action Network v. Public Utilities Com.*, *supra*, 187 Cal.App.4th at p. 697.)

Rothman does not explain or show from the record what, if any, "complaints about Downing's religiously motivated mistreatment" of Rothman he made to anyone within the unit or LAPD. Rothman also has not produced evidence showing that Downing personally engaged in any "religiously motivated mistreatment" of Rothman at any time before or after Rothman's removal from the Liaison Unit. Further, Rothman has not provided evidence showing to whom he complained about Downing's alleged mistreatment before being removed from the Liaison Unit or what adverse employment action he suffered as a result of the complaint. Although the evidence demonstrates Rothman reported to Stainbrook the incident involving the questioning of Rothman regarding sidelocks worn by Orthodox Jewish men, he has not shown sufficient evidence to support a reasonable inference that Downing condoned such conduct.

Rothman also argues that he complained to "Downing and other supervisors about discrimination," but he only cites his deposition testimony that he reported to Stainbrook the incident involving the questioning regarding sidelocks worn by Orthodox Jewish men. As we have concluded, this incident involved conduct that was insensitive and

somewhat contradictorily, that the adverse employment action began with his assignment to the Liaison Unit as "the only Jewish officer in a unit whose resources were 90 [percent] dedicated to Muslim community outreach." Yet Rothman does not claim he reported conduct that he believed to be unlawful under FEHA, or any other state or federal law or regulation, before he was assigned to the Liaison Unit, so he cannot claim he was assigned to the Liaison Unit in retaliation for engaging in protected activity.

offensive, but Rothman has not shown and the record does not suggest that such conduct amounted to unlawful discrimination. Rothman also has not shown he had a reasonable and good faith belief the incident amounted to unlawful harassment under the FEHA. As such, Rothman cannot show he engaged in a protected activity under either the FEHA or section 1102.5 of the Labor Code by reporting the incident to Stainbrook.

Rothman also argues that he "reported what he reasonably believed to be violations of separation of church and state . . . [concerning] the inappropriateness of Muslim officers praying on-duty, and in uniform." This argument apparently refers to Rothman's comment to a fellow officer after Rothman saw a photograph of two Liaison Unit officers praying in a mosque that, "[t]hey are not allowed to pray in uniform." Rothman has not produced any evidence to contradict Downing's declaration stating that neither the LAPD nor Downing required officers in the Liaison Unit to pray in mosques or during other religious services. Rather, the evidence in the record demonstrates all officers were free to refrain from praying during the services, and some officers chose not to pray. Rothman also has not shown either he or any other officer experienced any negative consequence for choosing not to pray during Friday evening prayer services. The decision to pray was thus one made by the two officers depicted in the article and, at best, raised an issue of LAPD policy or procedure. Rothman could not have reasonably and in good faith believed that the two officers' personal decisions to participate in a prayer service constituted a constitutional violation or violation of federal or state law. Rothman also has not explained for his FEHA retaliation claim how the activity of the two officers or any response by Downing or the LAPD to the officers' conduct amounted to illegal discrimination or harassment. As such, his subsequent statement to a fellow officer regarding the two officers praying does not satisfy the requirements to be considered a protected activity under Labor Code section 1102.5, subdivision (b).[14]

---

[14]    The officer to whom Rothman commented was the same rank as Rothman. Apart from his failure to cite any evidence in the record supporting his argument, Rothman fails to explain why, and cites no authority for the proposition that, his statement to an officer of his same rank in these circumstances would constitute a disclosure of information to a

20

Rothman has not identified any other law or regulation that was purportedly violated. He thus has not produced sufficient evidence to create a triable issue of material fact that he engaged in a protected activity under either of his retaliation causes of action under the FEHA or Labor Code section 1102.5 or that he was removed from the Liaison Unit for reporting such activity.[15] We therefore conclude Rothman has not provided sufficient evidence to establish a prima face case for his retaliation causes of action.

D.      *The Trial Court Properly Granted Summary Judgment on Rothman's FEHA Harassment Cause of Action*

To establish a prima facie case under the FEHA of a hostile work environment, an employee must show that: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment was based on the employee's status as a member of a protected group; (4) the harassment was sufficiently severe or pervasive as to alter the conditions of employment and create a hostile or abusive work environment; and (5) the employer is liable. (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608; accord, *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283 (*Lyle*); *Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 951 (*Rehmani*).) Harassment includes verbal, physical, or visual conduct that is physically threatening, or humiliating, or that involves ridicule, insults, derogatory

---

government or law enforcement agency within the meaning of Labor Code section 1102.5, subdivision (b). By failing to provide reasoned argument and legal authority in support of his argument, Rothman forfeits any claim of error on this point. (*Castillo v. DHL Express (USA)* (2015) 243 Cal.App.4th 1186, 1195; *Valov v. Department of Motor Vehicles* (2005) 132 Cal.App.4th 1113, 1132.)

[15]    Rothman asserts in his statement of facts that he reported to Gordon improper conduct involving supervisors chasing after Muslim women while on duty, a fellow officer using a city car while off duty and accepting gifts, and officers arriving late to work. But he has not shown that such conduct violated federal or state law or regulations. He thus cannot show that he engaged in protected activity in reporting such conduct.

21

comments or slurs, or discriminatory intimidation; it is not conduct that is merely annoying or offensive.[16] (*Lyle*, at p. 280; *Rehmani*, at p. 951.) "The conduct must be extreme: '"simple teasing," [citation] offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."' [Citation.]" (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1377.) Pervasive conduct is conduct that amounts to a concerted pattern of harassment of a repeated, routine, or a generalized nature, rather than conduct that is occasional, isolated, sporadic, or trivial. (*Lyle*, at pp. 283-284; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 130-131.) "'"'[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances [including] the frequency of the discriminatory conduct; its severity; . . . and whether it unreasonably interferes with an employee's work performance." [Citation.]' [Citation.]" (*Lyle*, at p. 283.) The work environment, employee's job duties, employer's type of work, and social context may all be relevant when determining whether the challenged conduct occurred because of the employee's religion and whether the conduct altered the terms or conditions of employment. (*Id.* at p. 292; see also *Rehmani*, at pp. 951, 957-958.)

The City argues the evidence shows that Rothman was never subjected to harassment based on his religion that was sufficiently severe or pervasive as to alter the conditions of his employment.[17] The evidence presented in support of the summary

---

[16] The Supreme Court in *Lyle*, *supra*, 38 Cal.4th at page 295, stated regarding sexual harassment, "the FEHA is 'not a "civility code" and [is] not designed to rid the workplace of vulgarity.' [Citations.] While the FEHA prohibits harassing conduct that creates a work environment that is hostile or abusive on the basis of sex, it does not outlaw sexually coarse and vulgar language or conduct that merely offends."

[17] Rothman's claim of alleged harassment based on his religion does not conform to his pleading. Rothman's harassment cause of action alleges "Plaintiff was subjected to unwanted harassing conduct because he had a physical disability. [¶] . . . Plaintiff is informed and believes that [d]efendants, and each of them, harassed him based on his physical disability. . . ." The City did not argue in its summary judgment motion that

22

judgment motion concerning the incident involving the questioning regarding sidelocks worn by Orthodox Jewish men and other incidents supports the City's argument, as discussed below. The burden thus shifted to Rothman to produce sufficient evidence raising a triable issue of material fact for his harassment cause of action. From our review of the record, we conclude Rothman has failed to satisfy his burden.

In support of his harassment cause of action, Rothman lists a variety of conduct he believes constitutes actionable harassment by officers within the Liaison Unit, including officers questioning him regarding the hairstyles of Orthodox Jewish men, surveillance of his work activities, requiring him to visit a mosque during Friday evening prayers, requiring him to begin and end his shift at the police station, the threat and receipt of negative comment cards, the denial of a work permit for off-duty security work at a synagogue, and a threat to remove him from the Liaison Unit made prior to his removal. Rothman argues all of the above conduct was based on his religion and was sufficient to create a hostile or abusive work environment.[18] We disagree.

The Court of Appeal in *Rehmani*, *supra*, 204 Cal.App.4th 945 held that the defendant employer was not entitled to summary adjudication of the plaintiff's claims for harassment based on national origin and religion. (*Id.* at pp. 947-948.) The plaintiff, a Muslim born in Pakistan, alleged in his complaint that some of his Indian coworkers were

_____

Rothman's harassment cause of action was limited to his alleged physical disability, but instead addressed the merits of Rothman's claim of harassment based on his religion. The City therefore waived any objection to the pleading defect. (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 193-194, fn. 11 [by failing to argue that the defendant had not alleged a defense in its answer and instead addressing the defense on the merits in opposition to the defendant's summary judgment motion, the plaintiff waived the pleading defect].)

[18] The City notes that all of this conduct apart from the questioning regarding Orthodox Jewish hairstyles involved personnel management actions and argues that conduct involving personnel management actions cannot constitute harassment. That is not the law. Personnel management actions that communicate a hostile message based on an employee's religion or other protected status can support a harassment claim. (*Roby v. McKesson Corp.*, *supra*, 47 Cal.4th at pp. 708-709.)

repeatedly hostile toward him, told him that Pakistan and Afghanistan should be "'bombed and wiped out because of all the terrorist activity there,'" and asked him if he planned on blowing one of them up. (*Id.* at pp. 952-953.) The plaintiff also alleged that on September 11, 2009, a coworker sent an e-mail message stating that there were Indian treats in the break room to celebrate the plaintiff's birthday. When some employees arrived in the break room, another coworker told them that the plaintiff, who was out sick that day, "was out 'celebrating 9/11 and planning terrorist attacks.'" (*Id.* at pp. 953-954.) The defendant did not challenge the truth of these allegations, but instead argued that these were only isolated incidents that were not so severe or pervasive as to create a hostile work environment, and that the conduct was not based on the plaintiff's national origin or religion. (*Id.* at p. 954.) Citing the plaintiff's allegations and evidence of mistreatment by Indian workers toward their non-Indian colleagues and the defendant's discrimination against non-Indian workers, the Court of Appeal concluded that the defendant had failed to show that the plaintiff could not establish actionable harassment. (*Id.* at pp. 957-959.)

By comparison, the facts in this case fall far short of those in *Rehmani*. In particular, Rothman has not produced sufficient evidence to show he was subjected to severe or pervasive harassment because of his religion. To demonstrate unwelcome harassment, Rothman relies, in part, on the incident where a fellow officer and Kozak questioned Rothman during a meeting about the sidelocks worn by Orthodox Jewish men. Viewed in the light most favorable to Rothman, the incident was insensitive and offensive, but Rothman has not produced sufficient evidence showing questions or comments of this nature occurred on a repeated basis, or were severe enough or sufficiently pervasive to alter the conditions of his employment and create a hostile or abusive work environment within the Liaison Unit. (See *Lyle*, *supra*, 38 Cal.4th at p. 284 ["when the harassing conduct is not severe in the extreme, more than a few isolated incidents must have occurred to prove a claim based on working conditions"].) Rothman also has not demonstrated from evidence in the record that he was given a negative

24

comment card, denied a work permit for off-duty security work, or subjected to any of the other conduct upon which he relies to show harassment because of his religion.

Moreover, even when we consider the conduct Rothman asserts amounted to harassment, together with the substantially similar conduct upon which Rothman relies for his discrimination cause of action, we conclude such conduct is not sufficient to communicate a hostile message to Rothman based on Rothman's religion, and is insufficient to raise a triable issue of material fact that the conduct was sufficiently severe or pervasive as to create a hostile or abusive work environment.  We thus conclude the trial court properly granted summary judgment on Rothman's harassment cause of action.

## DISPOSITION

The judgment is affirmed.  The City is entitled to costs on appeal.


GARNETT, J.[*]


We concur:



PERLUSS, P. J.



SEGAL, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.